*Martin*, and *Pigman*, for the Appellant, on the *first* bill of exceptions, cited *Peake's Evid.* 122. 2 *Esp N. P.* 70, (489;) and *Chapline's Lessee vs. Keedy*, 3 *Harr. & M·Hen.* 578.

<div style="float:right">1815.
Gist
vs
M'Guire</div>

*Shaaff, Taney*, and *Harper*, for the Appellee, on the same exceptions, cited *Dickinson vs. Shee*, 4 *Esp. Rep.* 67; and *Peake's Evid.* 164, 152.

The Court dissented from the opinion of the County Court in the *first* bill of exceptions, and concurred in the opinion in the *second.*

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

---

### Gist vs. M'Guire.

<div style="float:right">December.</div>

Appeal from *Frederick* County Court. This was an action brought on the 20th of January 1809, on a bond executed on the 22d of December 1797, by *Thomas Samuel Pole*, with *Joshua Gist*, (the defendant and now appellant,) and *Upton Bruce*, his sureties, conditioned that the said *Pole* prosecute an injunction obtained by him out of the court of chancery, to stay proceedings at law on a judgment obtained against him in the general court at October term 1797, by *Ross M·Guire*, (the plaintiff and now appellee,) for £300 current money, and costs. General performance pleaded. Replication, nonperformance, setting forth the proceedings in chancery, and assigning a breach, &c. Rejoinder, payment. Surrejoinder, nonpayment, and issue joined.

1. At the trial the plaintiff offered in evidence a record from the court of chancery, referred to and set out in the replication, being a copy of the proceedings on the injunction bill filed by *Thomas S. Pole*, administrator of *Legh Master*, against *Ross M·Guire*, stating, that on the 12th of July 1803, the chancellor dissolved the injunction, and that on the 28th of January 1805, the bill was dismissed. The defendant then offered in evidence, that a writ of *fieri facias* issued on the judgment mentioned in the said record, returnable to the general court at October term 1803. And further offered in evidence, by consent, the following receipt of *W. T. T. Mason*, Esq. the attorney for the plaintiff, and the statement of the said *fieri facias*, viz.

<div style="float:right; width:30%; font-size:smaller">In an action on an injunction bond it appeared that a judgment was recovered at law in 1797 for a sum of money, (without interest) and costs. The injunction, which had been granted to stay proceedings on the judgment, was dissolved in 1803, and the bill dismissed in 1805. A *fi. fa.* issued on the judgment at law in 1803, and in 1803 and 1804 two payments were credited, which left a small balance due. On this balance interest was calculated from the last payment to 1809, when a receipt for the sum then stated to be due, in full of the judgment, was given by the plaintiff's attorney before this action was brought. The plaintiff claimed damages equal to the interest on the principal sum for which the judgment was rendered, during the time the judgment was enjoined—— *Held*, that he was entitled to recover</div>

1815.

Gist
vs
M'Guire

"October term 1803.   No 154.

| | | |
|---|---|---|
| "Fi. fa. Damages, | | £300 0 0 |
| Costs, | | 22 8 7½ |
| | | 322 8 7½ |
| 1803, Oct. 5th, paid pl'ff. | 130 | |
| 1804, Dec. 1, paid    do. | 114 7 6 | |
| | | 244 7 6 |
| Bal. yet due pl'ff. | | 78 1 1½ |
| Interest from 1st Dec. 1804 to Feb. 17, 1808, | | 15 0 2 |
| | | 93 1 3½ |

February 17, 1808.   Received of Mr. *James Clarke*,
by the hands of Col. *John M'Pherson*, the sum of ninety-
three pounds one shilling and three pence, being the ba-
lance in full of a judgment obtained in the late general
court by *Ross M·Guire* against *Thos. S. Pole*, adm'r. of
*Legh Master.*

*Wm. T. T. Mason*, Att'y. for *Ross M·Guire*."
He also proved, that the said balance was paid over to the
plaintiff.   The plaintiff admitted to the jury that the prin-
cipal sum of money due on the judgment, and for which
the *fieri facias* issued, was paid before the bringing this
suit, but claimed damages equal to the interest on the prin-
cipal sum for which the judgment was rendered, during
the time the judgment was enjoined.   The defendant then
prayed the direction of the court to the jury, that if they
believe from the evidence that after the injunction on the
judgment was dissolved, the plaintiff sued out a *fieri faci-
as* on the judgment, and that he received the full amount of
the judgment before the bringing of this suit on the injunc-
tion bond, that then the plaintiff is not now entitled to re-
cover any interest on the said judgment as damages, during
the time the plaintiff was enjoined by the injunction, But the
Court, [*Buchanan*, Ch. J. and *Shriver* and *Nelson*, A. J.]
refused to give the direction.   The defendant excepted.

2.   The plaintiff also prayed the court to direct the jury,
that upon the evidence aforesaid their verdict ought to be
for the plaintiff; and he further prayed the court to direct
the jury, that if from the evidence they should be of opini-
on that the plaintiff was delayed in obtaining of the mo-
ney recovered in the judgment against *Thomas S. Pole*,

1815.

Gist
vs
M'Guire

for any period of time after the recovery had, and for which time he hath not received any interest on the said money, and that such delay of payment was occasioned by reason of the suit in chancery of the said *Pole*, that then such delay of payment of the money, so recovered by the judgment against the said *Pole*, is a proper circumstance for the jury to take into consideration in assessing the damages for the plaintiff, notwithstanding he may, before the bringing of this suit, have received all the money which he could have levied by execution on the said judgment against the said *Pole*, and that the legal interest of the money, the payment of which was so delayed, is a reasonable measure of the damages to be assessed by the jury. Which prayer the court granted, and directed the jury accordingly. The defendant excepted.

3. The defendant then prayed the opinion of the court to the jury, that if the plaintiff had received any interest on the judgment aforesaid, subsequent to the dismissal of the bill, the same ought to be deducted out of any sum which may be allowed by the jury. But the court refused to give the said direction. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before CHASE, Ch. J. and NICHOLSON, EARLE, and JOHNSON, J.

*Shaaff*, for the Appellant, contended—1. That no suit could be brought for interest; that if the principal debt had been extinguished, the damages consequent thereon were gone. 2. The court peremptorily direct the jury, as stated in the *second* bill of exceptions, to find for the plaintiff, without leaving it to the jury. There were two contradictory applications made for the court's direction to the jury, and the court, on one of them, directed the jury to find for the plaintiff, and on the other left it to the jury. 3. The direction asked for in the *third* bill of exceptions ought to have been granted; for if any interest had been paid, (as nothing was claimed by the plaintiff but interest,) it surely ought to have been deducted by the jury. The original judgment in the general court was on an award, and no interest was given. On the injunction bond to stay proceedings on that judgment, no interest could be recovered. The action ought to have been on the judgment,

1815.

Eversfield
vs
Eversfield

and then interest might have been recovered, if the principal sum had not been paid.  On the *fieri facias* issued on the judgment, no interest could be claimed, and when this action was brought, more than the amount of the judgment had been satisfied.  The plaintiff having waived his action of debt on the judgment, his right to recover interest was lost.  He chose to take a *fieri facias* on the judgment, under which the amount recovered was paid.

No Counsel argued for the Appellee.

THE COURT concurred in the opinions expressed by the County Court in all the bills of exceptions.

JUDGMENT AFFIRMED.

DECEMBER.      EVERSFIELD's EX'X. vs. EVERSFIELD's Representatives.

On the petition of E, as the executrix of her husband, to the orphans court, for an allowance of commission on the amount of the inventories returned, that court decreed that no commission be allowed —1. Because in all the settlements made by the agent of the executrix, all his expenses were charged and allowed, under an express avowal by him that no commission would be charged by her. 2. In consequence of the abandonment of commission, charges against the estate, where vouchers were not in form, or altogether wanting, were allowed. On appeal *reversed*, and decreed that the executrix be allowed for her commission 5 p. c. on the amount of the inventories, excluding what may have been lost or may have perished.

APPEAL from the Orphans Court of *Prince George's* county.  In this case a petition was filed in the court below by the appellant, as executrix of her husband, for an allowance of commission on the amount of the inventories returned.  The answer to this application stated, that the counsel of the executrix, and her agent, on their application to have her personal expenses allowed, had declared that it was never the intention of the executrix to charge a commission; and in the settlement of her final account she had elected to take an allowance for her personal expenses in lieu of her commission.  The replication denied all the facts stated in the answer, and then followed a statement of the amount and nature of the estate.  The record also contained the will of the testator, the inventories returned, and the several accounts of the executrix passed by the orphans court, in which there are allowances made for personal expenses, amounting to £64 17 10,  The decree of the orphans court was, "that no commission be allowed, for the following reasons:—*First.* Because in all the settlements made by the agent for the executrix, all his expenses were charged and allowed by this court, under an express avowal of the said agent that no commission would be charged by the executrix.  *Secondly.* Because in some of the items forming the different charges against the estate, vouchers were not in form, or were altogether wanting, yet they were allowed in consequence of the aban-